Filed 8/28/24  P. v. Salamanca CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GUMARO SALAMANCA,<br><br>    Defendant and Appellant. | B329730<br><br>(Los Angeles County<br>Super. Ct. No. TA082067) |

APPEAL from an order of the Superior Court of Los Angeles County, Allen Jospeh Webster, Jr., Judge.  Affirmed.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Charles S. Lee and Scott A. Taryle, Deputy Attorneys General, for Plaintiff and Respondent.

———————————————

In 2005, Gumaro Salamanca drove fellow gang members to three locations, where his passengers shot four people, killing one. In 2008, a jury, which had been instructed on the natural and probable consequences, aiding and abetting doctrine, convicted him of first degree murder, attempted willful, deliberate and premeditated murder, and shooting at an inhabited dwelling, and found true several firearm and gang allegations. In 2014, the trial court sentenced him to 50 years to life in prison, but on direct appeal we conditionally reversed the judgment to conform with recent changes in the law. (*People v. Salamanca* (Jan. 13, 2016, B254814) [nonpub. opn.] (*Salamanca I*).) On remand, the court reduced Salamanca's murder conviction to second degree murder and resentenced him accordingly.

In 2019, Salamanca petitioned the superior court pursuant to the predecessor of Penal Code section 1172.6,[1] which allows an inmate to seek to have a murder or attempted murder conviction vacated due to changes in the law if that person could not now be convicted under the new law. The court found he could still be convicted under the new law and denied his petition.

Salamanca appeals from that order, contending the trial court improperly relied on our prior appellate opinion in this case as evidence that he could still be convicted under the new law,

---

[1] All undesignated statutory references are to the Penal Code.

and moreover, improperly imputed malice to him based solely on his gang membership.  We reject these contentions and affirm.

## BACKGROUND

Because one of the issues on appeal is whether the trial court relied on our opinion in *Salamanca I* as evidence that Salamanca is still guilty of murder and attempted murder, we describe our recitation of the facts in that opinion, followed by the trial court's own recitation of the facts.

### A.    *Salamanca I*

In *Salamanca I*, we gleaned the facts from the reporter's transcript of the trial and set them forth as follows:

"Defendant is a member of the Compton Varrio 70 (CV70) street gang.  On October 5, 2005, CV70 gang leader David Guerrero ordered several gang members driving in two cars to commit three shootings as part of a longstanding conflict between CV70 and 'Piru,' a rival gang.  Following Guerrero's instructions, defendant drove several fellow CV70 members to a gas station, where two individuals exited his car and shot Charles Smith and Jazmine McKinney with two handguns and an AK-47 assault rifle.  Both victims survived.  Defendant then drove to Gibson Street, where someone in the car leaned out the front passenger window and shot at a house with the AK-47.  Finally, he drove to a parked car containing Dewan Ferguson and Melvin Walker, members of the Leuders Park Piru street gang, a CV70 rival.  Someone from his vehicle shot the Piru members with the AK-47.  Ferguson survived but Walker was killed."  (*Salamanca I, supra*, B254814.)

During a police interview, Salamanca, who denied gang membership, stated he was "ordered by a CV70 member whose name he did not know but whom he identified from a photograph

3

as Jose Encisco, to 'go for a ride,' with defendant driving his own car.

"Defendant left the house in his Honda with two passengers whose names he did not know, one in the front seat beside him and one in back. . . . He could not describe the front passenger, even as to his ethnicity or age, and never spoke to him. During the drive, defendant was directed by [David Guerrero] on the phone. . . . Guerrero informed defendant he (David) was following in a car with other CV70 members, and instructed him to pull over to a gas station.

"When defendant stopped at the gas station, his passengers got out and he shortly thereafter 'heard some gun shots.' He did not see where the passengers were shooting . . . .

"Guerrero then told defendant to drive to a specific house and stop. When he did so, his passengers half-exited the car and shot at the house, after which defendant drove them back to the Guerrero house. Once there, he transferred to an SUV, accompanied by Alejandro Perez, who now had the AK-rifle, and was directed by David Guerrero to drive to a specified location. When he arrived, Perez shot Ferguson and Walker from defendant's car.

"Throughout the interrogation defendant minimized his role in the shootings. He . . . repeatedly stated he had not wanted to drive with CV70 members but was forced to at gunpoint. Defendant claimed not to have seen any gun until he was already on the road . . . ." (*Salamanca I*, *supra*, B254814.)

We conditionally reversed Salamanca's murder conviction on the ground it may have been improperly based on the theory of natural and probable consequences, aiding and abetting, which the prosecution had argued to the jury but was later invalidated

4

by the Supreme Court as a basis for convicting a defendant of first-degree murder.  (*People v. Chiu* (2014) 59 Cal.4th 155, 166.)

On remand, the superior court reduced the conviction to second degree murder and resentenced Salamanca accordingly.

**B.**    ***Salamanca II***

In 2019, Salamanca petitioned for resentencing relief under the predecessor to section 1172.6, which is available to an inmate convicted of murder and attempted murder under the natural and probable consequences, aiding and abetting doctrine but not to "a major participant in the underlying felony who acted with reckless indifference to human life."  (See Stats. 2018, ch. 1015, §§ 1-3; Sen. Bill No. 775 (2020-2021 Reg. Sess.) at § 2); *People v. Martinez* (2019) 31 Cal.App.5th 719, 723.)  The trial court summarily denied the petition but we reversed that order and remanded the matter for further proceedings to determine whether Salamanca qualified for resentencing.  (*People v. Salamanca* (Mar. 22, 2022, B300962) [nonpub. opn.] (*Salamanca II*).)

**C.**    **Current Resentencing Proceedings**

On remand, the People filed supplemental briefing in which they argued Salamanca was a major participant in the 2005 shootings and acted with reckless indifference to life and express malice when he directly aided and abetted murder and attempted murder.  The People attached *Salamanca I* to their briefing and lodged the original trial transcripts on a computer disc and requested judicial notice of all filings and transcripts from trial.

At oral argument on the petition, Salamanca objected to the use of *Salamanca I* as evidence of any substantive facts.

On February 27, 2023, the trial court issued an 11-page minute order in which it referenced both *Salamanca I* and the trial record.

### 1. The Trial Court "Refers" to *Salamanca I* and Discusses the Trial Record

After discussing the procedural history of the case, the court stated it was "refer[ring] to condensed facts set forth by the court of appeal in its unpublished opinion." It then quoted and paraphrased our recitation of the facts in *Salamanca I*, as set forth above.

The court then acknowledged its "responsibility to act as an independent factfinder in determining petitioner's eligibility." It stated that the "California Rules of Evidence appl[y] and the court may consider evidence previously admitted at any previous hearing or trial that is admissible under current law including witness testimony, stipulated evidence[,] matters[] judicially noticed, and the record on appeal."

Referring to trial testimony, the court then expanded with facts found neither in *Salamanca I* nor *Salamanca II*, as follows:

"Petitioner . . . . testified at trial that he was struck upside the head a couple of times by the gang's shot caller and allowed to leave and go home. He believed that if he disobeyed the shot caller he would be beaten or killed.

"The petitioner went on to testify that he was acting under extreme [duress] without actual knowledge of the shot caller's intention or plans. He was like a mere puppet on a string with intent to survive and did not share anyone's intent to kill[,] and [argued] that malice cannot be imputed solely or participation in a crime.

6

"However, reviewing trial testimony of petitioner seems to suggest otherwise. The evidence indicates that petitioner was more than a low level gang member, but a gang member who had later admitted (through a wire tap) that he was a gang member involved in gang activities.

"The evidence shows that he drove his vehicle to all three locations. The wire tap confirms that the petitioner made a call to an unknown male and discussed how a rival gang 'Toke[r]s' were disrespecting him. He went on to ask if Trigger (a member of CV70) was nearby to back him up. A search warrant of his home uncovered documentation that he is a gang member with a moniker of 'Nappy.' "

## 2. Findings and Order

The court found, "Obviously petitioner was fully aware that occupants getting out of his auto and shooting assault weapons at people posed serious and deadly consequences. . . . There is no evidence that petitioner had experience shooting at people but circumstan[t]ial evidence would suggest that being a member of a violent gang that commits murders (especially of rival gang members), he was aware of the conduct of fellow gang members since he was present for all three shootings."

The court found that Salamanca "by driving there and doing nothing played a significant role in" the shootings, and after them "drove [the shooters] away to a safe location." "[I]n each instance, petitioner was the driver and waited at the scene in the car while the shooting occurred and then drove to the next location three times. He was also present during the planning and clearly understood the objective or goal in driving to certain locations. Furthermore[,] he was clearly aware of the dangers posed by shooting at people or inhabited dwellings . . . . Actually

7

he played a substantial role in these shooting scenes." "Given the totality of the circumstances . . . petitioner acted with reckless indifference to human life and acted with malice during the commission of all of the crimes he was convicted of."

Accordingly, the court found Salamanca could still be convicted of murder and attempted murder, and denied his petition.

## DISCUSSION

Salamanca contends the trial court impermissibly (1) relied on *Salamanca I* as evidence supporting its findings and (2) imputed malice to him based solely on his gang membership.

### A.    Legal Principles

#### 1.    Aiding and Abetting Murder

"All murder that is perpetrated by . . . any . . . kind of willful, deliberate, and premeditated killing . . . is murder of the first degree." (§ 189, subd. (a).) "All other kinds of murders are of the second degree." (*Id.* at subd. (b).)

"Murder, whether in the first or second degree, requires malice aforethought. (§ 187.) Malice can be express or implied. It is express when there is a manifest intent to kill (§ 188, subd. (a)(1)); it is implied if someone kills with 'no considerable provocation . . . or when the circumstances attending the killing show an abandoned and malignant heart' (§ 188, subd. (a)(2)). When a person directly perpetrates a killing, it is the perpetrator who must possess such malice. [Citations.] Similarly, when a person directly aids and abets a murder, the aider and abettor must possess malice aforethought." (*People v. Gentile* (2020) 10 Cal.5th 830, 844-845 (*Gentile*), superseded by statute on other grounds as stated in *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 584.)

8

An accomplice is guilty of a murder perpetrated by another "if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' " (*Gentile*, *supra*, 10 Cal.5th at p. 843.)

A second-degree murder conviction may be obtained "only if the prosecution can prove the defendant acted with the accompanying mental state of mind of malice aforethought. The prosecution cannot 'impute[] [malice] to a person based solely on his or her participation in a crime.' " (*Gentile*, *supra*, 10 Cal.5th at p. 846; see also § 188, subd. (a)(3) ["Malice shall not be imputed to a person based solely on his or her participation in a crime"]; § 1172.6, subd. (a) [allowing a petition for vacating a conviction and resentencing for a person convicted under a "theory under which malice is imputed to a person based solely on that person's participation in a crime"].)

Because malice may be implied "if someone kills with 'no considerable provocation . . . or when the circumstances attending the killing show an abandoned and malignant heart' " (*Gentile*, *supra*, 10 Cal.5th at p. 844), it follows that "an aider and abettor who does not expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life" (*id.* at p. 850).

### 2.    Section 1172.6

Senate Bill No. 1437 amended the "felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who

acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It accomplished this by amending section 188, subdivision (a)(3), to require that all principals to murder must act with express or implied malice to be convicted of that crime, with the exception of felony murder under section 189, subdivision (e). (Stats. 2018, ch. 1015, § 2.) For a felony murder conviction under section 189, subdivision (e), Senate Bill No. 1437 required that the defendant be the actual killer, an aider and abettor who acted with intent to kill, or a major participant in the underlying felony who acted with reckless indifference to human life. (Stats. 2018, ch. 1015, § 3.)

Senate Bill No. 1437 also created former section 1170.95 (now section 1172.6), which established a procedure for defendants already convicted of murder under the old law to seek resentencing in the trial court if they believe that they could not be convicted of that crime given the above amendments to sections 188 and 189. (Stats. 2018, ch. 1015, § 4.)

"[T]he process begins with the filing of a petition containing a declaration that all requirements for eligibility are met [citation], including that '[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [Penal Code] Section 188 or 189 made effective January 1, 2019,' . . ." (*People v. Strong* (2022) 13 Cal.5th 698, 708.)

If the petition states a prima facie claim for relief, the trial court must issue an order to show cause why relief should not be granted, and may hold an evidentiary hearing. At the hearing, the prosecution has the burden "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder [as those crimes are now defined] under California law as amended by the changes to Section 188 or 189 made effective

10

January 1, 2019." (§ 1172.6, subd. (d)(3).) "In other words, the People must prove a defendant who was not the actual killer was an aider and abettor with actual malice or a major participant in the underlying felony who acted with reckless indifference to human life, and he could therefore still be convicted of felony murder under section 189 as amended by Senate Bill No. 1437." (*People v. Clayton* (2021) 66 Cal.App.5th 145, 155.)

"The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. . . . The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (§ 1172.6, subd. (d)(3).) The court "should not rely on the factual summaries contained in prior appellate decisions." (*People v. Clements* (2022) 75 Cal.App.5th 276, 292; see also *People v. Vance* (2023) 94 Cal.App.5th 706, 713 [a factual summary in a prior appellate opinion is inadmissible to establish whether a defendant is eligible for resentencing relief].)

If the prosecution fails to meet its burden, the trial court must grant the petition and vacate the murder or attempted conviction. (§ 1172.6, subd. (d)(3).)

We presume the superior court understood the law and correctly performed its duties. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

### 3.    Standard of Review

We review a trial court's admission of evidence for abuse of discretion. (*People v. Helzer* (2024) 15 Cal.5th 622, 627.)

We will reverse a judgment or order based on improperly admitted evidence only if the appellant can show that if the evidence had been excluded, he would have enjoyed a more favorable result.  (See *People v. Epps* (2001) 25 Cal.4th 19, 29; *People v. Watson* (1956) 46 Cal.2d 818, 836; *People v. Vance*, *supra*, 94 Cal.App.5th at p. 714.)

B.     **Application**

1.     **The Trial Court did not Rely on Inadmissible Evidence**

Salamanca contends the superior court erred by relying on the statement of facts in *Salamanca I* as evidence for purposes of the resentencing hearing.  (He does not contend the trial evidence favorably differs from *Salamanca I*'s narrative.)

We disagree.  Although the superior court's minute order referred to and paraphrased *Salamanca I*'s narrative, nothing in the record establishes that the court relied on that narrative rather than on the trial transcripts and exhibits lodged with the court.

On the contrary, the court acknowledged its responsibility to act as an independent factfinder, described what type of evidence was admissible—"evidence previously admitted at any previous hearing or trial that is admissible under current law including witness testimony, stipulated evidence[,] matters[] judicially noticed, and the record on appeal"—which did not include our opinion in *Salamanca I*, and cited only trial testimony and exhibits as the basis for its findings.

For example, the court stated:  "The evidence at trial was distinctly different and conflicting"; "Petitioner characterized himself as a low level gang associate who acted under duress"; "The petitioner went on to testify that he was acting under

12

extreme [duress]"; "reviewing trial testimony of petitioner seems to suggest otherwise.  The evidence indicates that petitioner was more than a low level gang member"; "The evidence shows that he drove his vehicle to all three locations"; "The wire tap confirms that the petitioner made a call to an unknown male and discussed how a rival gang 'The Toke[r]s' were disrespecting him."

The court thus weighed conflicting evidence, referenced several facts not mentioned in *Salamanca I*, and made repeated reference to "evidence at trial," "the evidence," and "trial testimony," all of which indicates the court relied only on the trial record to support its findings about Salamanca's knowledge and mental state.  The court's reference to *Salamanca I* did not amount to improper reliance on that opinion as evidence of any fact.

We therefore conclude the record demonstrates that the trial court properly relied on the trial record as the basis for its findings and order.

## 2. The Court Did Not Impute Malice based on Gang Membership

In *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) our Supreme Court identified a number of factors to be considered "in determining the ultimate question, whether the defendant's participation 'in criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major.' " (*Id*. at p. 803.)  Those factors include:  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or using lethal weapons?  *What awareness did the defendant have of particular dangers posed by the* nature of the crime, weapons used, or *past experience or conduct of the other*

13

*participants?* Was the defendant present at the scene of the killing, in a position to facilitate or prevent the actual murder, and did his or her own actions or inaction play a particular role in the death? [Fn.] What did the defendant do after lethal force was used?" (*Ibid.*, italics added.)

After identifying all of the *Banks* factors, the trial court discussed the evidence relevant to each factor. In connection with the third factor, which it described as "What awareness did the petitioner have of particular dangers posed by the nature of the crime, weapons used or past experience or conduct of the other participants," the trial court stated its analysis as follows: "Obviously Petitioner was fully aware that occupants getting out of his auto and shooting assault weapons at people posed serious and deadly consequences. The intended targets were marked for death and/or serious injuries and numerous shots were fired to accomplish this criminal enterprise. *There is no evidence that Petitioner had experience shooting at people but circumstantial evidence would suggest that being a member of a violent gang that commits murders (especially of rival gang members), he was aware of the conduct of fellow gang members since he was present for all three shootings*." (Italics added.)

Salamanca contends the italicized sentence reveals the court's reliance on a "theory under which malice is imputed to a person based solely on that person's participation in a crime," in contravention of sections 188, subdivision (a)(3), and 1172.6, subdivision (a). We disagree.

The court relied on Salamanca's gang experience not to impute malice but, precisely as *Banks* instructs, to infer his "awareness . . . of particular dangers posed by the . . . past experience or conduct of the other participants." (*Banks, supra,* 61 Cal.4th at p. 803.) Salamanca's culpability as an aider and

14

abettor depended in part on his knowledge of the shooters' intentions, plans, and capability, which derived from his awareness of their past experience and conduct. That awareness, in turn, came in part from his being a member of a violent gang that commits murders. The court thus properly relied on his gang membership as one element of the collection of facts upon which it could properly infer his knowledge and thus culpability. It did not impute malice based solely on his participation in the crimes.

## DISPOSITION

The trial court's order is affirmed.

NOT TO BE PUBLISHED

KELLEY, J.[*]

We concur:

ROTHSCHILD, P. J.

BENDIX, J.

---

[*] Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.